IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

DIRECTV, INC.,

                    Plaintiff,

                                        Civ. Action No.
                                        5:03-CV-1126 (NAM/DEP)

        vs.

LAWRENCE EMMONS, SR., RODNEY
LUNDRIGAN, JAMES MOLINARO, ROBERT
VALENTINO and TOM WILKINSON,

                    Defendants.
_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

GARVEY, SCHUBERT LAW FIRM        MARIO AIETA, ESQ.
599 Broadway                    DANIEL JACOBSON, ESQ.
8th Floor
New York, NY 10012-3235

FOR DEFENDANT VALENTINO:

BLOOM, COLE LAW FIRM             STEPHANIE A. COLE, ESQ.
6 North Pearl Street
Buffalo, New York 14202

FOR DEFENDANT LUNDRIGAN:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

_____Plaintiff DirecTV, Inc., proclaimed to be the nation's leading provider of television and other programming by way of satellite transmission, commenced this action against five unrelated individuals having in common the fact that each has allegedly violated plaintiff's protected rights by possessing and utilizing decoding devices to capture plaintiff's transmissions, without its authorization.[1]  In its complaint, DirecTV seeks various relief available under the legal provisions giving rise to its claims including, *inter alia*, a permanent injunction, an award of statutory damages, and recovery of litigation costs and attorneys' fees.

---

[1]     The actions of DirecTV in commencing similar suits throughout the country joining multiple, unrelated defendants, has spawned a division among various courts regarding the propriety of such joinder.  Contrast *DirecTV, Inc. v. Vanryckeghem*, No. Civ.A. 04-253, 2004 WL 1794521, at *1-*3 (E.D. La. Aug. 10, 2004) (upholding joinder as permissible); *DirecTV v. Bartlett*, 220 F.R.D. 630, 631-32 (D. Kan. 2004) (same) with *In re DirecTV*, No. C-02-5912, 2004 WL 2645971, at *3-*5 (N.D. Cal. July 26, 2004) (finding such joinder to have been improper and collecting cases); *DirecTV v. Adrian*, No. 03 C6366, 2004 WL 1146122, at *2-*4 (N.D. Ill. May 18, 2004) (finding joinder improper).  The dismissal of plaintiff's claims against defendants Emmons, Molinaro, and Wilkinson, has left only Rodney Lundrigan and Robert Valentino as defendants in the case.  In light of the uncertainty which surrounds the joinder issue, by letter dated August 23, 2004 DirecTV initially signaled its willingness to stipulate to severance of its claims against the lone appearing defendant, Robert Valentino.  Dkt. No. 28.  Since upon the entry of default judgment against defendant Rodney Lundrigan defendant Valentino is the only remaining defendant appearing in this action, such severance is no longer necessary.

2

I.    BACKGROUND[2]

Plaintiff DirecTV operates as a broadcast satellite company, delivering television programming which includes broadcasts of major cable network programming, studio movies, special events, and various sports and special interests programming to end users, including in homes and businesses.  In developing its direct broadcast satellite system and establishing its position in the industry, DirecTV estimates that it has invested in excess of $1.25 billion.

To protect the integrity of its transmissions against unauthorized interception, DirecTV encrypts, or electronically scrambles, its signal. Residential and business DirecTV users subscribe to plaintiff's programming on a pay-per-view basis.  DirecTV customers receive access cards and other system hardware which together permit them to receive and view in decrypted format the programming which the user is authorized to receive, based upon the level of service purchased.

---

[2]    Unless otherwise noted the following recitation, which incorporates my findings of fact, is derived directly from the allegations of plaintiff's complaint.  By virtue of his default, defendant Lundrigan is deemed to have admitted the well-pleaded factual allegations contained in plaintiff's complaint, except as to those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *see also DirecTV, Inc. v. Sheffield*, No. Civ.03-5738, 2005 WL 563108, at *2 (D. Minn. Mar. 8, 2005) (citing 10A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2688 (3d ed. 2004) and Fed. R. Civ. P. 8(d)).

In May of 2001, assisted by law enforcement officials, DirecTV obtained business records from White Viper Technologies, a major source of pirate technologies, documenting sales by that company of illegal electronic devices, known as "pirate access devices" ("PADs"), designed to allow the unauthorized interception of plaintiff's encrypted signals. Those records disclosed that on or about January 2, 2001, defendant Rodney Lundrigan purchased from White Viper two PADs, including a printed circuit board device known as an "unlooper" and a programmer specifically designed to illegally modify DirecTV access cards. According to the records seized by DirecTV, those devices were sent to the defendant at his address in Taberg, New York. Though no specifics are provided, plaintiff's complaint alleges that through use of the two devices, defendant Lundrigan has intercepted DirecTV's protected signal without its authorization.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on September 15, 2003. Dkt. No. 1. Named as defendants in plaintiff's complaint were Lawrence Emmons, Sr., Rodney Lundrigan, James Molinaro, Robert Valentino and Tom Wilkinson. Plaintiff's claims against defendants Emmons, Molinaro, and

4

Wilkinson have since been dismissed, as a result of settlements, leaving only defendant Valentino, who has appeared in the action and will apparently be proceeding to trial, and defendant Lundrigan as the remaining defendants.[3]

According to a return of service filed with the court, defendant Lundrigan was personally served with the summons and complaint in the action on October 6, 2003.  Dkt. No. 5.  Based upon defendant Lundrigan's failure to answer or otherwise properly appear in the action within the required time period, on August 18, 2004 plaintiff requested the entry of his default.  Dkt. No. 24.  Lundrigan's default was subsequently entered by the clerk on August 19, 2004, Dkt. No. 25, and DirecTV was thereafter instructed, by letter dated August 19, 2004, to move for default judgment within thirty days.  Dkt. No. 26.

For reasons which are not readily apparent, DirecTV moved for the entry of default judgment against defendant Lundrigan on two separate occasions, the first on August 27, 2004, and thereafter once again on October 27, 2004.  Dkt. Nos. 35, 44.  For all practical purposes, the

---

[3]     Although defendant Valentino remains a party to the action, the certificate of service submitted by DirecTV with its motion, Dkt. No. 35, does not reflect service of plaintiff's papers upon that defendant, as required.  *See* Fed. R. Civ. P. 5(a).

5

papers submitted in support of those two separate requests for default

judgment are the same.  The entry of default judgment against defendant

Lundrigan was subsequently authorized by District Judge Norman A.

Mordue on March 28, 2005, Dkt. No. 46, and the matter has been referred

to me for a determination of the measure of relief to be awarded to the

plaintiff, based upon defendant's default.  *Id. See* 28 U.S.C. §

636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

        The three causes of action asserted in plaintiff's complaint implicate

two discrete statutory provisions, with certain overlapping features.

Plaintiff's first claim alleges defendant's unauthorized reception of

DirecTV's satellite signals in violation of 47 U.S.C. § 605, a provision of

the Federal Communications Act of 1934 as amended, *inter alia*, by the

Cable Communications Policy Act of 1984.[4]  Plaintiff's second and third

causes of action seek redress for violation of the Electronic

_____

        [4]      The Cable Communications Policy Act of 1984, Pub. L. 98-549, 98 Stat.
2779 (1984), was adopted in order to address "'a problem which [wa]s increasingly
plaguing the cable industry -- the theft of cable service,' including 'gaining access to
premium movie and sports channels without paying for the receipt of those services[.]'"
*See International Cable Vision, Inc. v. Sykes*, 997 F.2d 998, 1003 (2d Cir. 1993) (citing
H.R. Rep. No. 934, 98th Cong., 2d Sess. 83 (1984), reprinted in 1994 U.S. Code
Cong. & Admin. News 4655, 4720).

Communications Privacy Act of 1986, including for unauthorized interception of electronic communications and unauthorized possession of a PAD, in violation of 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b), respectively, and the companion civil damage provisions of 18 U.S.C. § 2520(c).  Plaintiff's default judgment motion seeks recovery under both of these provisions.  While as will be seen, there is substantial overlap of these two distinct provisions, each provides its own remedial scheme which authorizes imposition of both criminal and civil sanctions.  Accordingly, I will address the two provisions separately.

>     A.     47 U.S.C. § 605(a)

>>          1.     Liability

Count one of plaintiff's complaint alleges violation of 47 U.S.C. § 605(a), which outlaws various practices including, *inter alia*, the unauthorized receipt of an interstate or foreign communication by radio. *Sheffield*, 2005 WL 563108, at \*2.  This provision clearly covers the conduct alleged in plaintiff's complaint which, by his default, defendant Lundrigan has admitted.  Defendant's liability under 47 U.S.C. § 605(a) is therefore established.  *Sheffield*, 2005 WL 563108, at \*2; *DirecTV, Inc. v. Huynh*, 318 F. Supp.2d 1122, 1128 (M.D. Ala. 2004).

7

2.    <u>Damages</u>

In the event of a violation of section 605(a) the imposition of both civil and criminal penalties is authorized.  *See* 47 U.S.C. § 605(e).  Civilly, an aggrieved party establishing a violation of section 605(a) may recover either the actual damages suffered as a result of the violation together with the profits reaped by the violator and attributable to the violation, to the extent not taken into account in computing actual damages, or, alternatively, statutory damages, for each violation, "[i]n a sum of not less than $1,000 or more than $10,000, as the court considers just[.]"[5]  47 U.S.C. § 605(e)(3)(C)(i)(II).  Under this remedial scheme, a party bringing suit under section 605 may elect whether to seek recovery of actual damages, or instead to call upon the court's discretion to award statutory damages.  47 U.S.C. § 605(e)(3)(C)(i); *DirecTV, Inc. v. Montes*, 338 F. Supp.2d 352, 355 (D. Conn. 2004).  In this case, DirecTV has opted for recovery of statutory damages, offering no evidence of the amount of pecuniary harm actually suffered by it as a result of defendant Lundrigan's

---

[5]    That section goes on to provide for enhancement of statutory damages, in the event of a showing of willful infringement, to an amount not exceeding $100,000 per violation, and a reduction, in the case of an innocent violation, to not less than $250.  47 U.S.C. § 605(e)(C)(ii)&(iii).  In its complaint DirecTV does not assert a willful violation, nor does there appear to be a basis to conclude that defendant's actions were innocent, within the meaning of 47 U.S.C. § 605(e)(3)(C)(iii).

actions.

In light of plaintiff's election to pursue recovery of statutory damages in lieu of offering proof of its actual losses, the court is called upon to exercise its discretion to award statutory damages within the ranges disclosed above.  Because plaintiff has presented an adequate basis for determining an appropriate amount of statutory damages to award, based upon the papers submitted, and plaintiff DirecTV has not requested an evidentiary hearing, I find it unnecessary in this instance to conduct such a hearing.  *Montes*, 338 F. Supp.2d at 354; *DirecTV v. Meinecke,* No. 03 Civ.3731, 2004 WL 1535578, at *1 (S.D.N.Y. July 9, 2004); *DirecTV, Inc. v. Getchel*, No. 3:03 CV 2073, 2004 WL 1202717, at *1 (D. Conn. May 26, 2004); *Huynh*, 318 F. Supp.2d at 1129.

The determination of whether to award statutory damages, and if so in what amount, is entrusted to the sound discretion of the court.  *Montes,* 338 F. Supp. at 355.  In determining how properly to exercise that discretion, some courts have drawn upon criteria utilized to affix statutory damages under 17 U.S.C. § 504(c), based upon a finding of copyright infringement.  *Time Warner Cable of New York City v. Dockins, et al.*, 96 Civ. 6852, 1998 U.S. Dist. LEXIS 22689, at *18-*19 (S.D.N.Y. Sept. 4,

1998).  Among the factors deemed relevant by the courts to the statutory

damage analysis are 1) the amount of profit realized by the defendant as

a result of the violation; 2) whether the defendant assisted or induced

others in violating the statute; 3) whether the violation was willful or

flagrant; 4) what award would suffice to deter similar conduct; and 5)

whether the damage award contemplated is comparable to awards

rendered in other similar cases.  *Sheffield*, 2005 WL 563108, at *3;

*Huynh*, 318 F. Supp.2d at 1131-32; *DirecTV, Inc. v. Perrier*, No. 03-CV-

400, 2004 WL 941641, at *3 (W.D.N.Y. Mar. 15, 2004).

In assessing these highly relevant factors I am somewhat

handicapped both by the fact of defendant's default and by virtue of

plaintiff's failure to offer any evidence to illuminate several of these factors

as they apply in this case.  There is no information now before the court,

for example, as to whether Lundrigan was at any time a DirecTV

customer, and if so what monthly charge was associated with his level of

subscription, and whether that level and the corresponding charge

decreased at or about the time of his purchase of the White Viper

unlooper and programming device.  Similarly, there is no information as to

the cost to a patron in defendant Lundrigan's circumstances of

10

subscribing to DirecTV services.  Contrast *Sheffield*, 2005 WL 563108, at

\*3 (model constructed of typical user of DirecTV services); *see also*

*Montes*, 338 F. Supp.2d at 356 (evidence submitted showing defendant

was a former DirecTV subscriber at an approximate monthly cost of $80).

Under these circumstances, I admit to temptation to follow the path

of several other courts which have found an award of minimum statutory

damages of $1,000 under 47 U.S.C. § 605 adequate to vindicate the

salutary objectives underlying section 605.  *E.g.*, *Huynh*, 318 F. Supp.2d

at 1132; *DirecTV, Inc. v. Kaas*, 294 F. Supp.2d 1044, 1049 (N.D. Iowa

2003); *see also Perrier*, 2004 WL 941641, at \*3 (awarding minimum

statutory damages of $2,000, based upon purchase of two separate

devices, each deemed to represent a separate violation).  There is great

room for doubt, however, as to whether such a relatively modest award

would serve as the deterrent envisioned in the statutory damage scheme.

As one court has sagely observed,

> [i]t would not be a sufficient deterrent if the
> damages were limited to the value of the stolen
> services.  There would be no incentive to comply
> with the law if the penalty were merely the amount
> [or less] that should have been paid.

*Sheffield*, 2005 WL 563108, at \*4.

Although acknowledging some inability, for reasons already articulated, to accurately gauge with precision the deterrent impact of such an award, I recommend enhancement of the statutory damage award to the sum of $6,080.  This amount is calculated first by estimating the monthly cost of a DirecTV subscription at $80, and multiplying that figure by fifty-one months – the amount of time which has elapsed since defendant's purchase of the PAD devices in January of 2001.  To this approximated amount of DirecTV subscriber fees which Lundrigan has avoided by his use of private devices, I have added the $2,000 minimum statutory damage amount, based upon his acquisition of two pirate devices, to provide the desired penal and deterrent effect.  *See Montes*, 338 F. Supp.2d at 356 (awarding, in addition to the base amount of $1,000, $80 per month for forty-one months, for a total award of $4,280); *Getchel*, 2004 WL 1202717, at \*2-\*3 (awarding, above the $1,000 statutory floor, the additional sum of $100 per month for a period of thirty-eight months, for a total damage award of $4,800); *see also Time Warner Cable of New York City v. Barbosa*, No. 98 Civ. 3522, 2001 WL 118608, at \*5 (S.D.N.Y. Jan. 2, 2001) (the statutory goals are served by taking into account the duration of the violation and awarding damages based on lost

revenues to the plaintiff during that time period).  Such an award, which as

can be seen is consonant with the awards in *Getchel* and *Montes*, and

considerably less than the $10,000 awarded in some similar cases, *e.g.*,

*Meinecke*, 2004 WL 1535578, at *3, will in all likelihood convey the

message of deterrence envisioned in the statutory regime and relevant

caselaw.

### 3.   Costs and Attorneys' Fees

In addition to seeking statutory damages under section 605(e),

DirecTV also requests that the court award litigation expenses and a

reasonable attorneys' fee.  Plaintiff seeks a total amount of $813.88 in

connection with this element of its quest for relief.

In the event of a showing of a violation under 47 U.S.C. § 605(e),

the prevailing plaintiff is entitled to an award of reasonable costs and

attorneys' fees.  47 U.S.C. § 605(e)(3)(B)(iii); *see Community Television

Sys., Inc. v. Caruso*, 284 F.3d 430, 434 n. 5 (2d Cir. 2002).  Courts which

have addressed similar requests for the entry of default judgment in

DirecTV cases have routinely made such an award, although the amounts

as well as the bases for those awards have varied.  *E.g.*, *Huynh*, 318 F.

Supp.2d at 1130; *Perrier*, 2004 WL 941641, at *4; *Kaas*, 294 F. Supp.2d

at 1049.

Consistent with the prevailing requirements in this circuit, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), DirecTV has properly supported its fee application with contemporaneous time record entries, as well as information regarding the attorneys performing the various services, and additionally has sufficiently documented its application for costs.  Upon review of those materials, I find that the requested award is well supported, and recommend that the judgment to be entered in include this amount, which is less then the $850 sought in plaintiff's complaint in costs and fees in the event of default. *See Perrier*, 2004 WL 941641, at *5 (awarding $850 in fees and costs).

     B.   <u>18 U.S.C. § 2520</u>

        1.   <u>Liability</u>

Count two of plaintiff's complaint alleges the unauthorized interception by defendant Lundrigan of electronic communications in violation of 18 U.S.C. § 2511(1)(a).  On its face, that section imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"  18 U.S.C. §

2511(1)(a).  A separate provision authorizes the imposition of civil

penalties in the event of a violation of section 2511(1)(a), providing, in

relevant part, that

> the court may assess as damages whichever is the
> greater of  --
>
> (A)  the sum of the actual damages
> suffered by the plaintiff and any
> profits made by the violator as a
> result of the violation; or
>
> (B)  statutory damages of whichever
> is the greater of $100 a day for
> each day of violation or $10,000.

18 U.S.C. § 2520(c)(2).  As was the case under section 605(e), plaintiff

has elected to seek statutory damages under this provision, and requests

the maximum recovery of $10,000.  In light of his default, defendant

Lundrigan has admitted liability under section 2511(1)(a).

The third count of plaintiff's complaint alleges defendant Lundrigan's

possession of two PAD devices, in violation of 18 U.S.C. § 2512(1)(b).

That section provides, in relevant part, that

> any person who intentionally
>
> *  *  *
>
> (B)  manufactures, assembles,
> possesses, or sells any electronic
> mechanical, or other device,

15

> knowing or having reason to
> know that the design of such
> device renders it primarily useful
> for the purpose of the
> surreptitious interception of wire,
> oral, or electronic
> communications, and that such
> device or any component thereof
> has been or will be sent through
> the mail or transported in
> interstate or foreign commerce . .
> . shall be fined under this title or
> imprisoned not more than five
> years, or both.

18 U.S.C. § 2512(1).  Although by his default defendant has

acknowledged his violation of this section, I recommend dismissal of this

claim in light of the weight of authority holding that section 2520(c)(2) does

not provide a private right of action for civil damages for violation of

section 2512(1)(b).  *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th

Cir. 2004); *DirectTV, Inc. v. Craig*, No. 2:03-cv-818, 2005 WL 659138, at

*3 (M.D. Ala. Mar. 16, 2005) (citing *Treworgy*); *Sheffield,* 2005 WL 563108

at *1, n.1.

### 2.   Damages

The civil statutory damage regime under section 2520 differs

somewhat markedly from that set forth in 47 U.S.C. § 605(e).  While, as

was seen, the court was empowered under section 605(e) to affix

16

damages at any point within the specified range of between $1,000 and $10,000, the court's discretion under section 2520 is limited; in the absence of proof of a violation extending over a specific number of days, the presumptive award under section 2520, if any, is $10,000. *Kaas,* 294 F. Supp.2d at 1048 ("the presumptive award of damages is $10,000" where there is no evidence of actual damages or duration of the violation). In this instance, where there is no indication of the number of days over which the violation occurred, the choice open to the court under section 2520(c) is to award either $10,000, or no damages at all under that provision. *Huynh*, 318 F. Supp.2d at 1132; *Schmidt v. DeVino*, 206 F. Supp.2d 301, 306 (D. Conn. 2001); *see also DirecTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004) (the decision of whether to award damages under section 2520(c) in the event of a violation of section 2511(1)(a) is discretionary; accordingly, such an award is not mandated).

Among the factors often considered by courts when deciding how to choose between these two extremes in cases similar to this are 1) whether the defendant has profited from the violation; 2) whether there is evidence of actual use by the defendant of the PAD; 3) the extent of financial harm to the plaintiff; 4) the extent of the violation; 5) whether the

defendant had a legitimate reason for his or her actions; 6) whether an award would serve a legitimate purpose; and, significantly, 7) whether the defendant is subject to another judgment based upon the same conduct. *Sheffield,* 2005 WL 563108, at *3; *Huynh*, 318 F. Supp.2d at 1132.

In this case, plaintiff has already been awarded significant amounts in statutory damages and litigation costs under section 605(e).  Under the circumstances, I recommend that the court follow the lead of others which, faced with similar circumstances, have exercised their discretion in favor of denying an additional award under section 2520(c)(2), in recognition of the reality of "the potential of [section 2520(c)] to bring financial ruin to persons of modest means, even in cases of trivial transgressions." *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996); *see Huynh*, 318 F. Supp.2d at 1132; *see also Sheffield*, 2005 WL 563108, at *5; *Perrier*, 2004 WL 91641, at *4; *Kaas,* 294 F. Supp.2d at 1049.

IV.   SUMMARY AND RECOMMENDATION

In a society in which the rule of law governs, encroachment upon another party's protected rights should be deterred, and not rewarded. This unassailable principle would be undermined if, by its award, the court were to make compliance with the relevant statutory provisions more

costly than abridging the rights which they serve to protect.

As a result of his default, plaintiff DirecTV has established defendant Lundrigan's liability under both 47 U.S.C. § 605 and 18 U.S.C. § 2511(2)(a)(ii). Based upon the circumstances presented, and my estimate that by his conduct defendant Lundrigan may have avoided as much as $4,080 in DirecTV subscriber charges, I recommend that the court enter judgment awarding plaintiff statutory damages of $6,080, pursuant to section 605(e), with no additional award under section 2520(c). Such an award should adequately serve both to compensate DirecTV for its losses and deter the defendant and others from engaging in similar conduct in the future. Additionally, I recommend that plaintiff be awarded its costs and reasonable attorneys' fees, in the additional amount of $813.88, for a total award of $6,893.88. Because plaintiff does not seek injunctive relief, I recommend against the inclusion of a permanent injunction in the judgment to be entered. Based upon the foregoing, it is hereby

RECOMMENDED that in light of defendant Lundrigan's default, judgment be entered against him dismissing the third count of plaintiff's complaint, and awarding the plaintiff statutory damages in the amount of $6,080, together with an  additional sum in the amount of $813.88 in costs

and attorneys' fees, for a total award of $6,893.88, and that the plaintiff have judgment therefor.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon counsel for plaintiff and defendant Valentino via electronic means, and upon defendant Rodney Lundrigan by mail, utilizing the address set forth in Dkt. No. 5.

David E. Peebles
U.S. Magistrate Judge

Dated:    April 13, 2005
          Syracuse, NY

G:\Civil\2003\03-CV-1126\rep&rec.wpd